ORIGINAL

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM A. HAZZARD | ) | CIVIL ACTION LAW |
| | ) | |
| Plaintiff | ) | |
| | ) | No. 1:CV-00-1758 |
| Vs. | ) | |
| | ) | |
| TIM CURTIS, | ) | |
| MACK MCMURRAY, | ) | (JUDGE RAMBO) |
| AFSCME, DISTRICT 90, | ) | |
| AND THE HARRISBURG | ) | |
| SCHOOL DISTRICT | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendants | ) | |

FILED
HARRISBURG
MAR 0 4 2002
MARY E. D'ANDREA, CLERK
Per_____ DEPUTY CLERK

## PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS' SCHOOL DISTRICT AND CURTIS' SUMMARY JUDGMENT MOTION

I.)   **BACKGROUND**
     **A.) PROCEDURAL HISTORY**

Plaintiff filed his complaint in this matter on October 4, 2000 (Plaintiffs Ex-"G". He had earlier filed a PHRC/EEOC complaint which is still pending (plaintiff's Exhibit "F"). Defendants District and Curtis filed a motion for summary judgment on February 15, 2002. Defendants AFSCME and MacMurry filed their summary judgment on February 15, 2002. This brief is in opposition to Defendants District and Curtis' motion for summary judgment.

1

B.)  **FACTUAL HISTORY**

Hazzard, the plaintiff, is white. The defendants are all Black, or are entities operated, and, or, administered by, black citizens. Hazzard was the only person (he is a custodian in the Harrisburg School System) to bid on a properly posted position for Head Custodian at Rowland Intermediate School. This was the Summer of 1999. That Hazzard was in all ways qualified is not in dispute. However, the defendant School District promoted, after the posting of the position, and after Hazzard applied properly for the position in accordance with his employment contract, the defendant Robert (Mack) MacMurry. MacMurry is black, and is an AFSCME Union Shop Steward. Mr., MacMurry has less seniority than Mr. Hazzard. That is not disputed. He is in no way better qualified than Mr. Hazzard. After being denied the promotion he alleges he deserved, Mr. Hazzard grieved the denial of the promotion. In virtually every, and thus in similar situations, Mr. Hazzard has seen, or is aware of, the grievance procedure was adhered to and respected by the defendants AFSCME and the defendant School District for every black employee who chose to use the procedure. But in Hazzard's case the defendants chose, on the part of the defendant AFSCME, to unilaterally and without notice, warning, or explanation, withdraw his grievance. The defendant School District, in violation of Mr. Hazzard's procedural rights, then denied him his access to a hearing process before the defendant District

Board. Nichelle Chivis, a high ranking AFSCME official, called the defendant District (she called Wanda Williams president of the Board) and told them not to listen to the plaintiff and his supporters complain Tapper Dep pgs 26-27. Ironically Hazzard was assisted by an AFSCME shop steward Robert Epps (who is black) because he felt Hazzard was being treated unfairly. Epps is no racist obviously, and was not allowed to the speak to District because AFSCME, through Chivis, made a private arraignment with District Board President Williams, and refused him the chance to speak at a public meeting. The District is obligated to make available, and has made access available in the past, for black employees. Mr. Hazzard believes, and the allegations of the complaint clearly aver, that he was not only denied the promotion, but was denied the lawful right to grieve and protest his injuries on account of his race, white. Mr. Hazzard further alleges that with all allegations being weighed together, that Mr. Hazzard, being more senior in his employment experience than Mr. McMurry, is entitled to the duly posted position for which he was the only applicant. A jury, based upon the pervasive evidence that a more qualified white person was discarded, denied promotions, and ignored intentionally by the defendants, than a less qualified black person, could properly and easily infer that Mr. Hazzard was unlawfully discriminated against in his contractual relations, in violation of his 13th and 14th Amendment rights pursuant to 42 U.S.C. §1981. As to

3

further injury, Mr. Hazzard has endured and continues to endure retaliatory harassment from Mr. Tim Curtis because he has opted to pursue redress through the courts.

The primary disputed facts are 1.) whether AFSCME improperly pulled plaintiffs grievance 2.) and, or, did so on account of race, 3.) whether the District was justified in claiming the position was posted in error, and whether AFSCME and the District justifiably prevented Hazzard and his colleagues from speaking before the Board. The following facts are not in dispute. 1.) Hazzard bid for the Roland School position, 2.) He was the only bidder, 3.) He was, as per the contract, qualified. 4.) The District later admitted they posted the position, 5.) But the District claimed they posted the position in error, 6.) AFSCME unilaterally withdrew the grievance never even informing or consulting Hazzard until after the fact, 7.) An AFSCME official (Chivis) unilaterally told the District that the grievance had no merit, 8.) An AFSCME official (Chivis) called District Board President Wanda Williams and informed her that some Union members (there were at least 2 shop stewards, one of whom were black) planned to speak at a public board meeting about the Hazzard matter, 9.) The Hazzard group, was not allowed to speak, 10.) Hazzard's opportunity to speak was a normal part of the complaint procedure.

## II.) ISSUES

A.) Has plaintiff made out a 1981 claim?

B.) Were there separate non-discriminatory reasons to deny Hazzard (a white man) the Rowland job and give it to MacMurry (a black man and Hazzard's AFSCME Shop Steward)?

C.) Did plaintiff sufficiently allege a claim for retaliation?

## III.) ARGUMENT

### A.) Has Plaintiff Made Out a §1981 claim?

Defendants' argument is built upon two independent propositions. One is that the law, and the applicable standard of review, provides a certain legal framework that governs §1981 claims, and controls what this Court can, and should, do with this case. Obviously, this first contention cannot be questioned. In a close case the coincidence of law and facts may challenge our system for changes, or make it difficult to apply the law to the facts of the case, thus making the court's role a tough one. The second proposition advanced by defendants is that the facts of this case don't fit within the legal framework ie. that the material facts aren't in dispute and thus there is no judicable controversy. As to the first - plaintiff cannot take issue with defendants' statement of the standard of review or the law. Although contrary to the defendants' claim, there is direct evidence of racial discrimination prohibited by

§1981 in this case, even under a burden shifting analysis, as employed in Title VII cases, as per *McDonald Douglas Corporation v. Green*, 411 U.S. 792 (1973) and the many cases it has generated, plaintiff meets that burden. That's because defendants have not provided a full or complete picture of the facts. In short, the issue in this case is not that a group of undisputed facts don't fit a legal framework. The issue is that there are disputed facts, or better yet, facts not disclosed by defendants, that do demonstrate a judicable controversy under the law. Plaintiff therefore accepts defendants legal construct and citations and incorporates them herein. There is no need to repeat legal maxims here beyond the *McDonald Douglas* test. It's the facts that the Court will apply that will decide these motions. The standards suggested by defendants on page 13 of their brief is applicable and quite simple: First, is plaintiff the member of a protected group?. This is a reverse discrimination claim. Under the facts pled and the law of *Iadimarco v. Runyon,* 190 F.3d 151 (1999) plaintiff at least has a right to bring a §1981 reverse discrimination claim. Defendants argue that plaintiff must introduce direct evidence of racial discrimination or evidence to support a reasonable probability that race played a role in the defendants' decisions. But plaintiff has met that burden. All of the people who decided plaintiff's fate (as it were improperly) were black. That's unquestioned. MacMurry, an AFSCME shop steward, who was less qualified (according to the Union contract) than Hazzard (who

6

had more seniority) took the position that Hazzard bid on. Nichelle Chivis, the AFSCME Union rep called the president of the School District Board (Tapper Dep. pgs 26, 41) (Chivis Dep. pgs 47-50) and spoke to Wanda Williams ( a 30 year AFSCME member), who is also black, and cut off Hazzard's chance to speak with his supporters to the School District (Epps Dep. pgs 14, 15, 17, 31, 49, 51, 52, and 53). The second and third standards may be combined here. They are that plaintiff needed to be qualified, and was rejected notwithstanding his qualifications. Plaintiff was not only qualified, he was more qualified than MacMurry. Defendants raise three misleading fact scenarios on three points. One is that the transfer of MacMurry in June of 1999 to Hamilton School was "temporary" ie, a holding pattern for MacMurry until Rowland opened up (they do this to justify not awarding Hazzard the bid). The second is that as a "major school" custodian MacMurry was more qualified than Hazzard for Rowland school. And the third is that the posting of the Roland school position was an ""error". As to point number 1.) MacMurry's transfer to Hamilton was not "temporary". On page 5 of their brief, District and Curtis make much of a misleading claim that defendants don't contest MacMurry's transfer to Hamilton as "temporary". Their evidence is simply that because Curtis, Freeman, and MacMurry say so, then its true. But this alleged fact is disputed by Hazzard and is simply not credible. Even Nichelle Chivis, the AFSCME Union Rep never knew of this self

serving red herring. (Chivis Dep. pg 18). If MacMurry didn't ask to be transferred then how could he have concurred in his placement at Hamilton as a temporary position? And why was it never written down, or why did no one else ever know it (Tapper dep pgs 32-33). And see the testimony of shop steward Epps at pages 22-23. If MacMurry's transfer to Hamilton was "temporary" why wasn't Epps as the union officials who filed the grievance for Hazzard, not made aware of it and given evidence of it. The reason he and Nichelle Chivis, and Rob Tapper, and William Hazzard never heard about the transfer of MacMurry to Hamilton being "temporary" is because it was created as an excuse to defeat this litigation, and has no foundation in truth or fact. As to point number 2.) there is virtually no valid distinction between "Major"" and "minor" head custodians. This is another misleading exaggeration that defendants have created to defend their refusal to recognize Hazzard's bid, as required by the Union contract, and avoid disclosure of their racially motivated action. The distinction between "Major" and "minor" head custodians is meaningless except for a $.50 per hour pay difference. In fact, given the amount of work needed it could be argued that a 1B (major) is an easier job then a 1A (minor). There is virtually no distinction as per the Union contract in anyway shape or form between a 1A and a 1B for qualification purposes. See Dep of Nichelle Chivis, AFSCME Union rep pgs 25 ln 16-pg 26 ln 21. See McCollum Dep pg. 29 line 4-23. There is

virtually no basis in law or fact anywhere in this case that supports the defendants' argument that they had any meaningful basis to disregard Hazzard's bid and replace him with MacMurry using the false argument that MacMurry came from a "major" as opposed to a "minor" position. In fact, Hamilton school where MacMurry was transferred by Curtis in June of 1999, was a "minor" school. And as to point number 3.) The posting of the position on Rowland school was not any error. There is simply no evidence produced by the defendants as to how they could have made such an "error". Hazzard wrote them requesting consideration for the position before it was posted. The defendants admit, and do not dispute, that this is an acceptable bidding practice and that Hazzard's request was accepted as a bonafide bid. Nor do defendants dispute that Hazzard was the only person to bid on the job. How could such a complex process of writing up a posting for the position, distributing it physically, as indeed it was, to all of the schools and buildings in the District, putting it in mailboxes and on District computers and also posting it to Board minutes, have happened, if it was an "error" and not intentional? It makes no sense. Lastly, if it was an error - so what? No action was ever taken by the District to rescind it. There is no factual basis to support the defendants' argument that posting the Rowland school position was an error except for their self- serving claims, or, that they should not have honored the posting of the position in any event. The fact is that MacMurry

9

never openly pursued or properly requested the position if indeed he ever did so in timely fashion, and that Hazzard, along with the other white head custodians, was discriminated against by these defendants (Tapper Dep pgs 14-16) all of whom were black. A jury could easily infer, on the evidence presented, that defendants acted out of racial animus and for racial reasons.

### B.) Separate Non-discrimintory Reasons.

For the reasons, and on the basis of the arguments made above, and based upon the facts appearing here particularly as to the issue of the artificial distinction between "major" and "minor" head custodians, as expressly addressed by Nichelle Chivis, let alone the express provisions of the relevant union contract, there is no legitimate "non-discriminatory" reason for denying Hazzard (white) the bid he made on the Rowland position, and instead giving it to a black union official (MacMurry).

### C.) Retaliation

Plaintiff did indeed testify that he believed Curtis would have mistreated him on the bereavement issue, and that his cruel and demeaning treatment of plaintiff would have occurred even if he hadn't filed his complaint. Plaintiff's belief or suspicion however is not evidence of why Curtis acted in the fashion he did. The facts are that Curtis acted this way after the Complaint herein was filed. The proof thereof is in the fact that Curtis required Hazzard to being in a birth certificate (See

McCollum Dep. pg 46). "The man had twenty two years with the school district and never, I mean never has a birth certificate been required from any individual. But yet from Mr. Hazzard he demanded one. I call that excessive". Just because Mr. Hazzard has understandably come to believe that Mr. Curtis will mistreat him (largely on account of his race) does in no way, discount, debunk, or dismiss the allegations that Mr. Curtis' acted to retaliate. It simply corroborates the underlying allegations of Curtis (black) mistreatment of Hazzard (white).

**WHEREFORE** defendants District and Curtis motion to dismiss should be denied and in the alternative the Court should also recognize a 1st Amendment adverse employment action and consequential interference with plaintiff's right of expression claims.

Respectfully Submitted,

_Don Bailey_
Don Bailey PAID# 23786
4311 N. 6th Street
Harrisburg, PA 17110
(717) 221-9500

11

## **CERTIFICATE OF SERVICE**

I hereby certify that on this <sup>4th day of MARCH 2002</sup> a true and correct copy of the foregoing **DOCUMENT** were served upon the following counsel of record by United States Mail, postage prepaid and by Fax:

ERIC FINK, ESQ.
WILLIG, WILLIAMS & DAVIDSON
1845 WALNUT STREET
24TH FLOOR
PHILADELPHIA, PA 19103

SHAWN LOCHINGER, ESQ,
RHOADS & SINON LLP
ONE SOUTH MARKET SQUARE
P.O. BOX 1146
HARRISBURG, PA 17108-1146

BY: _/s/ Don Bailey_
Don Bailey ID# 23786
4311 N. 6th Street
Harrisburg, PA 17110
(717) 221-9500