

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

WILLIAM A. HAZZARD

**Plaintiff**

v.

**TIM CURTIS, MACK McMURRAY,
AFSCME, DISTRICT 90, and THE
HARRISBURG SCHOOL DISTRICT,**

**Defendants**

:
:
:
:
:
:
:
:
:
:
:

**CIVIL NO. 1:CV-00-1758**



## M E M O R A N D U M

Before the court are Defendants' motions for summary judgment. The parties have briefed the issues, and the motions are ripe for disposition.

I.        **Background**

A.    **Procedural Background**

Plaintiff filed the instant action on October 4, 2000, naming as Defendants the following individuals and entities: the Harrisburg School District (the "District"); Timothy Curtis, the District's Facilities Supervisor; Robert "Mack" McMurray, Head Custodian at the Rowland Intermediate School in the District; and the American Federation of State, County and Municipal Employees, AFL-CIO, District Council 90 ("AFSCME"). On February 15, 2001, Defendants District and Curtis filed a joint motion for summary judgment. Also on February 15, 2001, Defendants AFSCME and McMurray filed a separate joint motion for summary judgment.

### B. <u>Factual Background</u>

The following facts are undisputed except where otherwise noted. Plaintiff, William Hazzard, a Caucasian male, has been employed by the District for over thirty years. Plaintiff is currently employed as a head custodian within the District. Plaintiff is a member of AFSCME which is a party to the Collective Bargaining Agreement ("CBA") that covers various District jobs. AFSCME is the exclusive bargaining representative with respect to District employees.

Pursuant to the CBA, head custodians in the District are distinguished based on the size of the building to which they are assigned. Head custodians in larger schools, or "major" buildings, are classified as Facility Service Foreman 1B. Head custodians working in smaller buildings, or "minor" buildings are classified as Facility Service Foreman 1A. Starting pay for head custodians in major buildings is fifty cents more per hour than head custodians employed in minor buildings. However, raises are standardized for all head custodians. Head custodians in major buildings are usually responsible for supervising more employees because of the increased size of the buildings.

Defendant McMurray, an African-American male, is also employed by the District as a head custodian. Prior to June 18, 1999, Defendant McMurray worked as the head custodian at the District's William Penn School, a major building. Immediately prior to June 18, 1999, the District employed Plaintiff as the head custodian at the Marshall School, a minor building.

Defendant Curtis, also an African-American male, is the Facilities Supervisor for the District. On June 18, 1999, Defendant Curtis transferred all twelve head custodians in the District from their existing assignments to different

2

schools in the District.  At the time of the transfer, the District was renovating a building intended to be opened as a new school, the Rowland Intermediate School ("Rowland").  The District planned to open Rowland at the beginning of the 1999-2000 school year.  As a result of the transfer, the District moved Plaintiff's employment position from the Marshall School to the Shimmell School, another minor building in the District.  That transfer did not affect Plaintiff's pay.

Defendant Curtis testified at his deposition that on June 18, 1999 he intended to name  Defendant McMurray as head custodian of Rowland.  (Curtis Dep. 22-23.)  However, at that time, he transferred Defendant McMurray to the Hamilton School, a minor building, on a temporary basis until Rowland opened. (Curtis Dep. at 19, 40-41); (Freeman Dep. at 27-28); (McMurray Dep. at 15-16.) Because the CBA requires that temporarily downgraded employees keep their higher pay rate during temporary downgrades, Defendant McMurray's rate of pay never changed despite the fact that he moved from a major building to a minor building.  Defendant Curtis also testified that he selected Defendant McMurray as head custodian at Rowland because McMurray had previously worked as a head custodian at another major building, the William Penn Building.

Plaintiff knew that a head custodian position would be opening at Rowland in the 1999-2000 school year.  On June 25, 1999, Plaintiff expressed, in writing, his interest in obtaining the position.  Plaintiff has never worked as a head custodian in a major building in the District.  It is the District's policy to accept bids on positions prior to the posting of the position.  Thus, the District accepted Plaintiff's letter as a bid on an open position.  However, Defendant Curtis had

3

already decided to assign the position to McMurray when Plaintiff bid on the position.

Defendant Curtis further testified that the District posted the Rowland head custodian position on July 8, 1999. However, this posting was an error. (Curtis Dep. at 39.) Following the posting, no one applied for the position at Rowland. In August 1999, the District transferred Defendant McMurray to Rowland. Plaintiff disputes that the position was posted in error. (Pl. Br. in Opp. Def. District & Curtis Mot. Summ. Jud. at 2, 9-10.) Plaintiff also asserts that he had more seniority than Defendant McMurray and, therefore, was more qualified for the position. (*Id.* at 2.)

Plaintiff first learned of the District's decision at a general meeting of head custodians that took place in July or August of 1999. On August 12, 1999, Plaintiff filed a grievance against the District through AFSCME. In the grievance, Plaintiff contended that he should have received the Rowland position, under the terms of the CBA, because he was the only person to bid on it. Plaintiff did not assert that race played a role in the decision to transfer Defendant McMurray to Rowland. At a meeting regarding the grievance, the District's Personnel Director told an AFSCME staff representative that the Rowland posting had been an error, and the position was never opened for a bid. (Pl. Dep. at 88-89, 232); (Chivis Dep. at 23, 30.) Pursuant to the CBA, the District has the right to laterally transfer personnel from one building to another without posting the position. The AFSCME staff representative accepted the Personnel Director's explanation because, months before Plaintiff expressed an interest in the Rowland position, a District representative had explained at labor-management meetings that the District

4

intended to staff Rowland by laterally transferring personnel from William Penn. However, the AFSCME staff representative recommended that the District pay Plaintiff the rate of a major building head custodian because of the confusion surrounding the posting. The District's Personnel Director rejected this proposal.

On March 14, 2000, AFSCME withdrew Plaintiff's grievance for lack of merit and indicated that it did not intend to take any further action with respect to the matter. However, in April 2000, a class action grievance was filed on behalf of all head custodians based on the District's denial of vacation leave. The class action grievance arose when the District instructed another custodian that he could not take a vacation unless Plaintiff withdrew his request for leave on the same date. The grievance regarding vacation leave was resolved in favor of all head custodians, including Plaintiff. Then, in June 2000, Plaintiff filed another grievance after Defendant Curtis questioned bereavement leave that Plaintiff had previously taken. This grievance was also resolved in Plaintiff's favor in February 2001.

On April 18, 2000, Plaintiff filed a Complaint with the District in accordance with the District's internal complaint procedure. The Complaint again alleged that Plaintiff was the only bidder for the Rowland position and, thus, was entitled to the job. Plaintiff followed the complaint procedure and eventually received a hearing before the School Board. By letter dated June 26, 2000, the School Board denied the Complaint.

Plaintiff subsequently instituted the instant action. In Count I, Plaintiff contends that all Defendants discriminated against him based on his race. Plaintiff's complaint also states a pendant state law claim against AFSCME for breach of duty

5

of fair representation, asserting that the union failed to arbitrate a grievance on his behalf because he is Caucasian.

## II.        <u>Legal Standard: Motion for Summary Judgment</u>

Federal Rule of Civil Procedure 56 provides that summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

A factual dispute is "material" if it might affect the outcome of the suit under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" only if there is a sufficient evidentiary basis which would allow a reasonable fact-finder to return a verdict for the non-moving party. *Id.* at 249. The court must resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party. *White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir. 1988).

Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party may not simply sit back and rest on the allegations in the complaint. Instead, he must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, and designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal quotations omitted). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element

6

essential to that party's case and on which that party will bear the burden at trial." *Id.*

### III.        Discussion

####        A.        42 U.S.C. § 1981

The parties agree that the burden shifting analysis promulgated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), governs Plaintiff's claims for violation of 42 U.S.C. § 1981.[1]  *See also Perry v. Woodward*, 188 F.3d 1220, 1228 (10th Cir. 1999) (holding that *McDonnell Douglas* is applicable to § 1981 claims); *Smith v. Chevron USA, Inc.*, 876 F. Supp. 70, 74 (E.D. Pa. 1995) (applying *McDonnell Douglas* framework to § 1981 claim).

The *McDonnell Douglas* burden shifting analysis first requires that the plaintiff establish a prima facie case of discrimination.  411 U.S. at 802.  Once the plaintiff establishes the prima facie case, the employer must articulate some legitimate non-discriminatory reason for its action.  *Id.*  If the employer offers some evidence of such a justification, the plaintiff must demonstrate that the stated reason for plaintiff's rejection was in fact a pretext for discrimination.  *Id.* at 804.

####        1.        Prima Facie Case

In a typical racial discrimination case, the plaintiff establishes a prima facie case by demonstrating that: (1) he is a member of a protected class; (2) he was

---

[1]In relevant part, 42 U.S.C. § 1981(a) states:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of all persons and property as is enjoyed by white citizens. . . .

qualified for the job and applied for it; (3) he was rejected despite his qualifications; and (4) after he was rejected, the position remained open, and the employer sought other applications from persons with similar qualifications. *Id.* at 802.

In this case, however, Plaintiff has brought a "reverse discrimination claim." That is, Plaintiff bases his claim on the fact that he is Caucasian, rather than membership in a racial minority group. In the Third Circuit, absent direct evidence of discrimination, a reverse discrimination plaintiff establishes a prima facie case by "presenting sufficient evidence to allow a reasonable fact finder to conclude (given the totality of the circumstances) that the defendant treated plaintiff 'less favorably than others because of his race, color, religion, sex, or national origin.' " *Iadimarco v. Runyon*, 190 F.3d 151, 163 (3d Cir. 1999) (quoting *Furnco Const. Corp. v. Waters*, 438 U.S. 567, 577 (1978)).

In *Iadimarco*, the Third Circuit held that the plaintiff presented sufficient evidence from which a fact-finder could conclude that the plaintiff suffered reverse discrimination. In that case, the plaintiff, a Caucasian postal employee, applied for a posted plant manager position which was ultimately awarded to an African-American female. The plaintiff scored high on the test used as the hiring criteria and held a degree in engineering, a prerequisite for the position. Yet, the defendant re-posted the position and eventually awarded it to someone who never took the hiring test and did not have an engineering background. Additionally, the plaintiff pointed out that the defendant authored a diversity memo in which he emphatically stressed his desire to fill vacant management positions with minority candidates. Given this evidence, the Third Circuit held that the

plaintiff had satisfied his burden of establishing a prima facie case of reverse discrimination. *See id.* at 164-65.

In *Kondrat v. Ashcroft*, 167 F. Supp.2d 831 (E.D. Pa. 2001), the court applied *Iadimarco*, holding that the plaintiff satisfied his burden of establishing a prima facie case of reverse discrimination. In that case, a male Caucasian physician assistant claimed that he had been terminated on the basis of his race. At the summary judgment stage, he presented evidence that his superior, a woman of Indian national origin, made offensive and hostile comments to Caucasian males and in particular to the plaintiff. *See id.* at 836 ("[The plaintiff's superior] made known her opinion that the United States is run by white men and that she needed to do something about it, and that she had the power to do so. . . . She specifically warned [the Plaintiff] that she would get him.") (citations omitted). There was also evidence that she did not treat the plaintiff in the same manner as his non-Caucasian or foreign counterparts and that she falsely accused the plaintiff of unsatisfactory performance which ultimately resulted in his termination. *Id.* at 833-34.

Given the totality of the circumstances in this case, it appears that Plaintiff has satisfied his initial burden. All of the parties involved in the hiring decision at issue are African American, and the position was awarded to Defendant McMurray, an African American. Although the race of those who make challenged personnel decision by itself is insufficient to establish a prima facie case of discrimination, it is relevant. *Iadimarco*, 190 F.3d at 156. Additionally, it is undisputed that Defendant District posted the position as open for bids, and Plaintiff was the only employee who expressed his interest in writing. When these two facts are combined, it would not be unreasonable to infer that race was the reason for

9

Defendants' decision.  Although, unlike *Iadimarco* and *Kondrat*, there is no smoking gun demonstrating anti-Caucasian animus or pro-minority predisposition, there is no indication in those cases that such evidence is necessary at the prima facie case stage.

### 2.    **Defendants' Non-Discriminatory Justification**

Even though the court holds that Plaintiff has produced evidence that could establish his prima facie case, our inquiry does not end there.  As previously stated, the burden shifts to Defendants to proffer a legitimate non-discriminatory reason for its actions.  *See McDonnell Douglas*, 411 U.S. at 802.

In response, Defendant District contends that it chose Defendant McMurray over Plaintiff because Defendant McMurray was more qualified.  It is undisputed that Defendant McMurray had previously worked as the head custodian at another major building.  On the other hand, Plaintiff lacked such experience. Additionally, Defendant McMurray had been employed as a janitor longer than Plaintiff, even though Plaintiff has more overall seniority than McMurray.  (*See* Pl. Dep. at 19-21 (acknowledging that he had worked as a member of grounds crew and a truck driver for approximately 20 years before becoming a janitor).)  Moreover, Defendants contend that Plaintiff and Defendant McMurray were not working in the same position when the District posted the Rowland position.  Rather, the District had temporarily assigned McMurray to a minor building pending completion of the Rowland building's remodeling.  This conclusion is supported by the fact that the District continued to pay McMurray at the rate of pay for head custodians at major buildings.  Plaintiff acknowledged this fact in his deposition.  (*See* Pl. Dep. at 179-183).  This practice is allowed under the terms of the CBA.

Defendants also contend that they erroneously posted the position.  It is uncontested that Defendant Curtis had already decided by June 18, 1999 – a week before Plaintiff bid on the Rowland Position and twenty days before the District posted the position – that he would exercise his rights under the CBA to transfer Defendant McMurray into the position without posting it.  (Def. Dist. & Curtis Stat. of Mat. Facts at ¶ 22;) (Pl. Counter Stat. of Mat. Facts at ¶ 22.)  Defendant Curtis did so because he felt that Defendant McMurray was the most qualified candidate for the position.  Mere administrative mistake resulted in the position being posted. Therefore, Defendants have presented evidence demonstrating a non-discriminatory reason for its actions.

### 3.    Pretext

Once the defendant has satisfied its burden of production at the second stage, the burden switches back to the plaintiff to provide evidence from which a jury could conclude that the defendant's proffered justification is a pretext for racial discrimination.  *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993).  At this point, the plaintiff may defeat a motion for summary judgment by pointing "to some evidence, direct or circumstantial, from which a factfinder would reasonably either: (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994); *accord Jones v. School Dist. of Philadelphia*, 198 F.3d 403, 413 (3d Cir. 1999).  At this stage, the plaintiff cannot simply assert that the defendant's proffered reason is insincere.  Instead, the plaintiff must point to some inconsistencies or contradictions in the defendant's reason that would indicate that it

11

was not only wrong, but that it was "so plainly wrong that it cannot have been the employer's real reason." *Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1109 (3d. Cir. 1997).

In this case, Plaintiff offers the following contentions to support a finding of pretext: (1) Plaintiff was more qualified than Defendant McMurray due to the fact that Plaintiff had greater seniority; (2) Plaintiff was at least as qualified as Defendant McMurray because there is no real distinction between head custodian positions in major and minor buildings; and (3) Defendant did not make a mistake by posting the Rowland position. These averments are not only insufficient to carry Plaintiff's burden, many are not supported by the uncontested facts in the record.

First, as discussed above, Plaintiff was not more experienced than Defendant McMurray. *See supra* at Sec. III.A.2. Although he had more seniority with the District, it is clear that Defendant McMurray had more experience as a janitor and had experience as the head janitor of a major building which Plaintiff lacked.

Second, Plaintiff's own admissions eviscerate his contention that there is no distinction between the head janitor positions at major and minor buildings. There are two significant differences: (1) head custodians at major buildings are paid fifty cents more per hour; and (2) due to the size of the buildings, head custodians at major buildings are in charge of supervising more employees. (Def. Dist. & Curtis Stat. Mat. Facts at ¶¶ 6, 8;) (Pl. Counter Stat. Mat. Facts at ¶¶ 6, 8.)

Third, Plaintiff's own admissions demonstrate that there is nothing to indicate that the posting of the position had anything to do with racial animus. Plaintiff admits that before the position was posted, Defendant Curtis had already

decided to hire Defendant McMurray as Rowland's head custodian.  Additionally, Plaintiff contends that "Curtis had absolutely nothing to do with the posting of the Rowland School Custodian position and all defendants are aware of this fact.  The position was posted according to standard procedure."  (Pl. Counter Stat. Mat. Facts at ¶ 35.)  If Defendant Curtis had already decided to award the position to a more qualified candidate and the position was posted as a matter of standard procedure, then a reasonable fact-finder could not conclude that Defendants' proffered reason is a pretext for racial discrimination.  Because Plaintiff has not presented sufficient evidence to carry his burden at the final stage of the *McDonnell Douglas* analysis, the court will grant summary judgment in favor of Defendants on Plaintiff's § 1981 claim.

**B.    Retaliation**

In his complaint, Plaintiff claims that Defendant Curtis retaliated against him for initiating a grievance regarding the Rowland school position.[2] (Complaint at ¶ 19.)  Defendants move for summary judgment on this issue as well. According to Plaintiff, the retaliation arose out of Plaintiff's claim for bereavement leave.

To establish a prima facie case of unlawful retaliation under § 1981, the plaintiff must demonstrate that: (1) he engaged in protected activity; (2) he suffered an adverse employment action after or contemporaneous with the protected activity; and (3) a causal link exists between the protected activity and the adverse employment action.  *Weston v. Commonwealth of Pennsylvania*, 251 F.3d 420, 430

---

[2]Plaintiff makes no mention of the other Defendants' involvement in the alleged retaliation. Accordingly, the court will presume that Plaintiff asserts this claim only against Defendant Curtis.

(3d Cir. 2001); *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1299 (3d Cir. 1997). The existence of a causal link "must be considered with a careful eye to the specific facts and circumstances encountered." *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 279 n.5 (3d Cir. 2000). Evidence that proves or disproves a causal link can be "gleaned from the record as a whole." *Id.* at 281

Defendants point out that Plaintiff admitted that Defendant Curtis would have acted in the same manner towards Plaintiff concerning the bereavement leave issue even if Plaintiff had never initiated the grievance procedure. Thus, according to Defendants, there is no causal link between the protected conduct and any adverse employment decision by Curtis. Plaintiff contends that the court can infer a causal link by the fact that Curtis allegedly required Plaintiff to bring in his birth certificate in order to receive the leave in question. According to the deposition of Robert McCollum, no other employee has been required to bring in a birth certificate in order to receive bereavement leave. (*See* McCollum Dep. at 46.)

The court, however, finds that Plaintiff has not presented sufficient evidence to create a material issue as of fact as to this claim. Although the two incidents may have been temporally related, the fact that Plaintiff may have been required to bring in his birth certificate in order to receive bereavement leave is insufficient evidence from which a jury could conclude that Defendant Curtis retaliated against him. *Cf. Jalil v. Avdel Corp.*, 873 F.2d 701, 708 (3d Cir. 1989) (holding that the plaintiff established prima facie claim of retaliation where record indicated that he was discharged two days after filing an EEOC claim). This claim is even weaker given Plaintiff's admission that Defendant Curtis would have treated him the same way regardless of Plaintiff's grievance. Additionally, it is not

14

disputed that Plaintiff eventually received the bereavement leave.  Therefore, the court would be hard pressed to conclude that Plaintiff suffered an adverse employment decision.  Because Plaintiff has failed to present evidence establishing a prima facie case of retaliation, the court will grant summary judgment in favor of Defendant Curtis on Plaintiff's claim of retaliation.

### C.    Failure to Represent

In Count II of the complaint, Plaintiff asserts a state law cause of action against Defendant AFSCME for failure to represent.  Under Pennsylvania law, a union representing public employees has a duty of fair representation when processing grievances on behalf of union members.  *See* 43 Pa. Cons. Stat. Ann. §§ 1101.101 *et seq.*; *Ziccardi v. Commonwealth*, 456 A.2d 979, 980-81 (Pa. 1982).

Under 28 U.S.C. § 1367(c)(3), a district court may decline to exercise jurisdiction over claims based on state law when all federal law claims have been dismissed.  As discussed above, the court will grant summary judgment in favor of Defendants on Plaintiff's claim for violation of 42 U.S.C. § 1981.  *See supra* at Sec. III.A. That claim was the lone claim over which the court had original jurisdiction.  Accordingly, the court will dismiss Plaintiff's state law claim.

Even if the court were to determine that concerns of judicial economy and convenience counsel against dismissal of the state law claim, supplemental jurisdiction is proper under 28 U.S.C. § 1367(a) only where the state law claims are so related to the federal claims giving rise to original jurisdiction that "they form part of the same case or controversy."  Although the court previously asserted supplemental jurisdiction over this claim at the Rule 12(b)(6) stage, through discovery it has become apparent that the District's decisions to hire McMurray over

15

Plaintiff and AFSCME's subsequent decision to withdraw Plaintiff's grievance are factually distinct matters. Therefore, supplemental jurisdiction is improper.[3]

## IV.        __Conclusion__

Plaintiff has not produced evidence from which a reasonable jury could conclude that Defendants' proffered non-discriminatory reason for its decision to place Defendant McMurray in the Rowland position over Plaintiff was a pretext for racial discrimination. Therefore, the court will grant summary judgment in favor of all Defendants on Plaintiff's claim in Count I of his complaint. Additionally, the court will grant summary judgment in favor of Defendants on Plaintiff's retaliation claim. Because there are no federal claims remaining in the suit, in addition to the fact that discovery has demonstrated that the matters are distinct, the court refuses to continue exercising supplemental jurisdiction over Plaintiff's remaining state law claim in Count II against Defendant AFSCME for breach of the duty of fair representation. Accordingly, that claim will be dismissed without prejudice.


                                    SYLVIA H. RAMBO
                                    United States District Judge

Dated: May 6, 2002.

---

[3]The court notes that an action for breach of the duty of fair representation sounds in contract. *See Falsetti v. United Mine Workers*, 161 A.2d 882, 893 (Pa. 1960). Under Pennsylvania law, such actions are subject to a four year statute of limitations. *See* 42 Pa. Cons. Stat. Ann. § 5525. Because Plaintiff's claims against Defendant AFSCME arose out of Nichelle Chivis's decision on March 14, 2000 to withdraw Plaintiff's grievance against the District, the statute of limitations has not run on Plaintiff's claim. Accordingly, Plaintiff will not be prejudiced by the court's decision to dismiss the state law claim.